IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 03-00538-03 HG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (03) CHERLYN A. NAPULOU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER REGARDING REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS
AND
TERMINATING DEFENDANT NAPULOU'S SUPERVISED RELEASE**

On February 1, 2010, the Ninth Circuit Court of Appeals filed an opinion vacating Special Condition No. 12 imposed on Defendant Cherlyn A. Napulou.  (Opinion, (Doc. 143).)  The formal mandate was filed on May 12, 2010.  (Mandate, (Doc. 148).)  On August 3, 2010, the United States Probation Office filed a separate request that Defendant be brought before the Court to show cause why supervision should not be revoked.  (Request For Course Of Action, (Doc. 151).)

On August 4, 10, 11, 26, and 31, 2010, the Court held a series of hearings to address these matters.  Pursuant to the mandate of the Ninth Circuit Court of Appeals, the Court finds that there was sufficient reason to impose Special Condition No. 12 at the March 24, 2008 sentencing for Defendant Napulou's violations of supervision.  Regarding the Probation Office's request that Defendant be brought before the Court to show cause

1

why supervision should not be revoked, the Court **TERMINATES**
Defendant's supervised release, effective August 31, 2010.

I.    **REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS.**

On February 5, 2004, Defendant Cherlyn A. Napulou pled
guilty to two counts of distributing methamphetamine. (Minutes
of Feb. 5, 2004 Hearing, (Doc. 24).)  The two counts were:
(1) distributing methamphetamine within 1,000 feet of an
elementary school, in violation of 21 U.S.C. §§ 841(a)(1) and
860(a), and 18 U.S.C. § 2; and (2) distributing methamphetamine
in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2.  <u>Id.</u>
Defendant's total offense level was 12, criminal history
category II, with a sentencing range of 12-18 months.  At
Defendant's sentencing hearing on May 20, 2004, the Court granted
the Government's motion for downward departure. (Minutes of May
20, 2004 Hearing, (Doc. 51).)  Defendant was sentenced below her
guideline range to 10 months of imprisonment, followed by 6 years
of supervised release.  <u>Id.</u>

At the time of sentencing on the methamphetamine charges
Defendant's criminal history reflected that in 2003, she had been
arrested after physically abusing her two minor daughters on
separate occasions.  She was charged with two counts of abuse of
a family or household member, in violation of Hawaii Revised

2

Statutes ("H.R.S.") § 709-906,[1] and pled guilty to assault in the third degree, in violation of H.R.S. § 707-712.[2] (Case No. FC-03-1-001443.)  The state court records reflect that Defendant did not participate in anger management and parenting classes, resulting in the revocation of her probation on July 8, 2003, and February 25, 2004.  Id.

**A.   The First Revocation Of Defendant's Supervised Release.**

Defendant's supervised release was revoked in November 2005, after Defendant admitted to committing eight violations of her conditions of supervised release.  (Minutes of Nov. 10, 2005 Hearing, (Doc. 83).)  The violations included pleading guilty to another instance of abuse of one of her daughters, the charge being abuse of a family member in Hawaii state court.  (Case No. FC-05-1-002087.)   According to a police report, after an

---

[1] Hawaii Revised Statutes § 703-906(1), entitled "Abuse of family or household members," provides: "It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4).  The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.  For the purposes of this section, 'family or household member' means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit."

[2] Hawaii Revised Statutes § 707-712(1) provides: "A person commits the offense of assault in the third degree if the person: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or (b) Negligently causes bodily injury to another person with a dangerous instrument."

argument on September 27, 2005, Defendant choked, kicked,
punched, and pushed her daughter.  The remaining violations of
supervised release included failing to participate in a substance
abuse program; failing to complete an anger management program;
associating with a convicted felon; misusing a handicap placard
and driving a motor vehicle without a valid driver's license;
failing to submit truthful written reports to her probation
officer; failing to follow the probation officer's instructions
and failing to answer truthfully the probation officer's
inquiries; and failing to notify the probation officer at least
ten days prior to a change in residence.  Id.

Defendant was sentenced to 24 months of imprisonment,
followed by 42 months of supervised release.  (Judgment,
(Doc. 84).)  She completed her sentence for violations of
supervised release on September 20, 2007.  (Request For Course Of
Action, (Doc. 100).)

B.   **The Second Revocation Of Defendant's Supervised
     Release.**

On November 7, 2007, the Probation Office filed a second
request for an Order To Show Cause Why Supervised Release Should
Not be Revoked.  (Doc. 100.)  At the December 12, 2007 hearing on
the matter, Defendant admitted to violating the conditions of her
supervised release.  (Minutes of Dec. 12, 2007 Hearing,
(Doc. 108).)  The violations included associating with a felon
named Karla K. Kahau on three separate occasions, in violation of

4

Standard Condition No. 9 and Special Condition No. 8.  Id.  At
the parties' request, the Court continued sentencing so that
Marvin W. Acklin, Ph.D., could conduct a psychological evaluation
of Defendant Napulou.  (Stipulation And Agreement, (Doc. 110).)
Dr. Acklin evaluated Defendant and submitted a Report of
Psychological Evaluation.  (Doc. 113.)  In his Report, Dr. Acklin
concluded that Defendant suffered from Major Depressive Disorder
and Borderline Personality Disorder.  Id.

     After reviewing Dr. Acklin's report, the Court held a second
hearing on March 24, 2008.  (Minutes of Mar. 24, 2008 Hearing,
(Doc. 114).)  The Court expressed concern regarding Defendant's
mental health condition and noncompliant and untruthful behavior.
(Transcript of Mar. 24, 2008 Hearing at pp. 9, 14, 18,
(Doc. 127).)  Based on the Court's experience as the presiding
judge over Kahau's criminal trial and supervision, as well as the
Court's knowledge that Kahau had been involved in an abusive
relationship with a felon named Casey Kealoha, the Court
expressed concern regarding Defendant Napulou's long-term
rehabilitation and the potential for violence between the
Defendant and Karla Kahou.  Id. at p. 9.  The Court also
expressed concern regarding Defendant's own capacity for violence
as reflected in her past convictions for child abuse.  Id. at
pp. 20-21.

     Defendant was sentenced to 10 months of imprisonment,

followed by 32 months of supervised release.  (Judgment,
(Doc. 116).)  The Court imposed Special Conditions of Supervision
including requiring Mrs. Napulou to take part in mental health
evaluation and treatment, with the aim of treating her Major
Depressive Disorder and Borderline Personality Disorder.  The
order also included Special Condition No. 12:  "That the
defendant not have any contact telephonic, written or personal
with Karla Kahau." Id.  Defendant completed her sentence for
violations of supervised release on September 5, 2008.  (Request
For Course Of Action, (Doc. 151).)

## C.   Hearings Pursuant To The Remand From The Ninth Circuit Court of Appeals.

On February 1, 2010, the Ninth Circuit Court of Appeals
filed an opinion vacating the imposition of Special Condition
No. 12.[3]  (Opinion, (Doc. 143).)  The formal mandate was filed on
May 12, 2010.  (Mandate, (Doc. 148).)  The appellate court stated
that "the sentencing court must undertake an individualized
review of [Karla Kahau] and the relationship at issue, and must
provide a justification for the imposition of such an intrusive
prohibitory condition." (Opinion at p. 1854, (Doc. 143).)  The
sentencing court must build a record that "reveals [Karla

---

[3] In addition to vacating Special Condition No. 12, the
Ninth Circuit Court of Appeals vacated Special Condition No. 8,
which provides: "That the Defendant shall not have regular
contact with anyone having a misdemeanor or felony conviction,
without the prior permission of the Probation Office."
(Judgment, (Doc. 116).)  Special Condition No. 8 remains vacated.

Kahau's] background, present character, relationship with the defendant, and nexus to defendant's prospects for returning to a criminal life[.]" Id.

On August 4, 10, 11, 26, and 31, 2010, the Court held a series of hearings to address these issues.  The Court received evidence regarding Defendant Napulou's relationship with Kahau during the time period preceding the March 24, 2008 revocation of Defendant's supervised release.  This evidence was known to the Court on March 24, 2008 and available in public records at the time the Court imposed Special Condition No. 12.

### 1.   Testimony of Senior U.S. Probation Officer Lisa Jicha.

Lisa Jicha, a Senior U.S. Probation Officer, testified that she supervised Karla Kahau upon the completion of Kahau's sentence in April 2004 through early 2005.  Kahau's criminal trial and supervision were all before this Judge.  As part of Probation Officer Jicha's training, she obtained a master's degree in social work and became a licensed clinical social worker and a certified substance abuse counselor.  Probation Officer Jicha testified that her background in substance abuse counseling and in clinical social work allowed her to use a blended approach to supervision, which included both law enforcement and counseling.

Probation Officer Jicha recounted Karl Kahau's criminal background.  On September 24, 2001, Kahau had been found guilty

7

of conspiracy to distribute and possess with intent to distribute
cocaine, heroin, crystal methamphetamine, and marijuana, in
violation of 21 U.S.C. § 846; and aiding and abetting the
possession with intent to distribute crystal methamphetamine, in
violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.
(Crim. No. 00-00184-09 HG, Judgment, (Doc. 517).)  Kahau's trial
was before this Judge.  The jury found that the amount of cocaine
involved was at least 500 grams, and the amount of
methamphetamine involved was at least 50 grams.  (Crim. No. 00-
00184-09 HG, Minutes of Sept. 24, 2001 Trial, (Doc. 440).)

Kahau's total offense level was 26, criminal history
category I, with a sentencing range of 63-78 months.  At Kahau's
sentencing hearing on February 21, 2002, the Court granted
Kahau's motion for downward departure.  (Minutes of Feb. 21, 2002
Hearing, (Doc. 508).)  Kahau was sentenced below her guideline
range to 27 months of imprisonment, followed by 5 years of
supervised release.  Id.

During the period of Probation Officer Jicha's supervision,
Kahau was involved in a romantic relationship with a felon named
Casey Kealoha.[4]  According to Probation Officer Jicha's

---

[4] Casey Kealoha's criminal matters were handled by a
different district court judge than Defendant Napulou and Karla
Kahau's matters.  On April 17, 2003, Kealoha pled guilty to
burglary of a residence, in violation of Hawaii Revised Statutes
§ 708-810 and 18 U.S.C. § 13.  (Crim. No. 02-00543-1 DAE,
Judgment, (Doc. 28).)  She was sentenced to 15 months of
imprisonment, followed by 3 years of supervised release.  Id.

testimony, Kahau admitted to her that between July and October 2004, she had been involved in multiple physical altercations with Kealoha.  (Request For Modifying The Conditions Or Term Of Supervision With Consent Of The Offender, filed Nov. 9, 2004, (Doc. 604).)  Probation Officer Jicha testified that Kahau delayed approximately one month before admitting that there had been an altercation between herself and Kealoha in July 2004. Id.  Probation Officer Jicha stated that Kahau described her relationship with Kealoha as "not a healthy relationship," and that Kahau stated that "she did not know how to stay away from Ms. Kealoha."  Id.  During the same time period, Kahau told a mental health professional that her relationship with Kealoha was abusive.  (Request For Modifying The Conditions Or Term Of Supervision With Consent Of The Offender, filed Dec. 29, 2004, (Doc. 605).)

> **2.    Testimony of U.S. Probation Officer Frank M. Condello, II.**

Frank M. Condello, II, a U.S. Probation Officer, testified that he supervised Karla Kahau after Probation Officer Jicha, beginning in February 2005 through Kahau's revocation of supervised release in 2006.  Probation Officer Condello was aware of Kahau's relationship with Casey Kealoha and provided testimony regarding the circumstances under which the Probation Office would grant an exception to Standard Condition of Supervision No. 9, which states: "the defendant shall not associate with any

persons engaged in criminal activity and shall not associate with
any person convicted of a felony, unless granted permission to do
so by the probation officer."

Probation Officer Condello stated that the U.S. Probation
Office grants exceptions to Standard Condition No. 9 on a case by
case basis.  He testified that the U.S. Probation Office will
typically permit an individual to associate with a felon if the
individual complies with all standard and special conditions of
supervision and remains stable for a period of time.  In addition
to these requirements, the Probation Office required Kahau and
Kealoha to attend counseling sessions with a clinical
psychologist, Dr. Meyers.  Probation Officer Condello testified
that he received frequent updates from Dr. Meyers regarding their
progress, including progress on issues such as violence in the
relationship.  Probation Officer Condello stated that in his
opinion, the domestic abuse and violence between Kahau and
Kealoha appeared mutual.

This Judge revoked Kahau's supervised release after she
admitted to committing three violations of her conditions of
supervised release.  (Crim. No. 00-00184-09 HG, Minutes of Apr.
24, 2006 Hearing, (Doc. 686).)  Kahau's violations included
failing to follow the probation officer's instructions and
failing to answer truthfully the probation officer's inquiries;
failing to report to her probation officer; and failing to submit

truthful written reports to her probation officer.
(Crim. No. 00-00184-09 HG, Request For Order To Show Cause Why
Supervised Release Should Not Be Revoked, (Doc. 649).)  Kahau had
lied to Probation Officer Condello regarding her ability to
maintain a stable employment and residence.  Id.  She also lied
to Probation Officer Condello regarding driving a motor vehicle
without a license.  Id.  Kahau failed to answer truthfully the
probation officer's inquiries when she previously lied to
Probation Officer Jicha about her romantic relationship with
Casey Kealoha.  Id.  Kahau was sentenced to 7 months of
imprisonment.  (Crim. No. 00-00184-09 HG, Judgment, (Doc. 692).)

     In addition to violating the conditions of her supervised
release, Probation Officer Condello testified that Kahau attended
a December 30, 2005 meeting accompanied by Casey Kealoha and four
male individuals who claimed to be members of the Hawaiian
Kingdom.  (Crim. No. 00-00184-09 HG, Request For Order To Show
Cause Why Supervised Release Should Not Be Revoked, (Doc. 649).)
Probation Officer Condello testified that while he stood in the
doorway between the U.S. Probation Office and the lobby, he had a
conversation with Kahau, Kealoha, and the four men.  Id.
According to his testimony, Kahau claimed that she was no longer
under the jurisdiction of the Probation Office or the U.S.
District Court for the District of Hawaii.  Id.  Kahau expressed
her belief that the United States did not have authority over

11

her, and that she was not subject to the conditions of her
supervised release.  <u>Id.</u>  Probation Officer Condello testified
that one of the four individuals present claimed to be an
attorney representing the Hawaiian Kingdom, and that at some
point during the conversation, the attorney put his foot in the
door to block it from being closed.  <u>Id.</u>  After the ten-minute
discussion, Kahau agreed to meet privately, outside the presence
of the four men claiming to be members of the Hawaiian Kingdom.
<u>Id.</u>

## II.   REQUEST FOR AN ORDER TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED.

On August 4, 10, 11, 26, and 31, 2010, the Court held a
series of hearings to address the Probation Office's request for
an Order To Show Cause Why Supervised Release Should Not be
Revoked.  (Doc. 151.)  The Court received evidence regarding
allegations that Defendant Napulou violated the conditions of her
supervised release.

### A.   Testimony of Percilla Burgess and Victoria Kipilii, Jeans Warehouse Employees.

Percilla Burgess, the general store manager of Jeans
Warehouse, testified that Defendant Napulou had been employed by
Jeans Warehouse since April 2009.  Burgess testified that during
her employment, Defendant would come to work crying after
fighting with her girlfriend, Karla Kahau.  Burgess stated that

12

on one occasion, Defendant arrived at work with deep scratches on her chest.

Victoria Kipilii, one of Defendant's co-workers at Jeans Warehouse, testified that she and Defendant worked together daily for approximately three to four months. Kipilii identified Karla Kahau in a photograph taken with Defendant and testified that on a daily basis, Defendant would be dropped-off and picked-up from work by Kahau. Kipilii stated that Defendant would come to work crying and would immediately call Kahau, and that on one occasion Defendant arrived at work with deep scratches on her chest.

### B. Testimony of Officer Robert Daclison, Honolulu Police Department.

Officer Robert Daclison of the Honolulu Police Department testified that he issued Defendant Napulou a citation on July 13, 2010. A patrol officer for eighteen years, Officer Daclison testified that the citation was for illegal camping without a permit. Officer Daclison identified Defendant Napulou as the individual that received the July 13, 2010 citation. He stated that when asked to identify herself, Defendant Napulou provided the name and date of birth of Charleann Durazo, Defendant's sister. Officer Daclison testified that the citation required Charleann Durazo to appear in state court on August 23, 2010.

### C. Testimony of Charleann Durazo and Angeline Napulou, Defendant Napulou's relatives.

Charleann Durazo, Defendant Napulou's sister, testified that

13

Defendant called her numerous times after receiving the July 13, 2010 camping citation.  The Court received into evidence three audio recordings, which Durazo saved from her cell phone voicemail.  Durazo identified her sister's voice in the recordings, which were made on July 14, 15, and 22, 2010.  In the July 14, 2010 recording, Defendant Napulou states that Charleann Durazo must appear in court on August 23, and directs Durazo not to say anything at court about Defendant's identity.  Durazo testified that she spoke with her sister the day after the Defendant received the camping citation.   During the conversation, Defendant explained in detail how she had given Durazo's name and address to Officer Daclison, and Defendant asked Durazo to attend the state court hearing and "admit" to the citation.  Durazo refused.  In the July 22, 2010 recording, Defendant uses abusive language and profanity to describe Durazo's refusal to appear in court for the illegal camping citation.

Durazo testified that since Defendant completed her sentence in September 2008, Defendant had not been living with their mother, Angie Napulou as Defendant had represented to the Probation Office.  Defendant had instead been living with Karla Kahau, who Durazo had met on five or six occasions.  During her testimony, Durazo identified Kahau in three photographs taken by Durazo.  The first two photos, taken in January 2009, show

14

Defendant and Kahau together at a music concert. The third photo, taken in May 2010, shows Defendant, Kahau, and Defendant's daughter together at a softball game.

Angeline Napulou, Defendant's mother, corroborated Durazo's testimony, stating that since Defendant completed her sentence in September 2008, Defendant had not been living with her at her home. Defendant had instead been living with Karla Kahau. Angeline Napulou testified that Defendant kept clothing at the home, for the purpose of convincing the Probation Office that she was living at her home.

**D.   Testimony of Kevin Teruya, U.S. Probation Officer.**

Kevin Teruya, a U.S. Probation Officer, testified that on June 28, 2010, he photographed Defendant Napulou and Karla Kahau in a car together.

**E.   Testimony of Tarama Fuatagavi, U.S. Probation Officer.**

Tarama Fuatagavi, a U.S. Probation Officer, testified that he supervised Defendant Napulou since June 2009, taking over for Senior U.S. Probation Officer Carter A. Lee. Probation Officer Fuatagavi submitted the August 3, 2010 request that Defendant Napulou be brought before the Court to show cause why supervision should not be revoked. (Request For Course Of Action, (Doc. 151).)

Probation Officer Fuatagavi testified that Defendant committed the following violations of supervision:

(1) failure to submit mandatory Verification of Employment Searches at the direction of Probation Officer Fuatagavi, in violation of Standard Condition No. 3;

(2) failure to answer truthfully Probation Officer Fuatagavi's inquiries regarding Defendant's association with a known felon and any contact with law enforcement, in violation of Standard Condition No. 3;

(3) failure to notify the Probation Office at least ten days prior to any change in residence, in violation of Standard Condition No. 6;

(4) failure to provide the Probation Office with truthful written reports for the months of January, April, May, and June 2010, in violation of Standard Condition No. 2;

(5) committing the violation of illegal camping; and

(6) failure to inform the Probation Office within seventy-two hours of being questioned by a law enforcement officer, in violation of Standard Condition No. 11.

Probation Officer Fuatagavi testified that in his experience, Defendant Napulou was consistently dishonest with the Probation Office.  He stated that Defendant's behavior did not demonstrate respect for the requirements of her criminal conviction.

**F.   Testimony of Sonja Fredlund and Sybil Huihui, Defendant Napulou's Relatives.**

16

Sonja Fedlund and Sybil Huihui, Karla Kahau's aunts, testified in support of Defendant Napulou.

## G.   Defendant Napulou's Supervised Release is Terminated, Effective August 31, 2010.

At the hearing on August 31, 2010, the Court once again expressed concern regarding Defendant Napulou's honesty. Defendant had lied to the Probation Office about her relationship with Karla Kahau, and about Defendant's place of residence. Defendant also lied to Officer Daclison when she was cited for illegal camping, giving her sister Charleann Durazo's name and contact information.  On multiple occasions, Defendant has been on probation in the state system, at times having her probation revoked for failure to attend anger management sessions.  In the Federal system, Defendant has been offered a number of services and assistance during her term of supervision.  All tools at the disposal of the Probation Office have been put to use, and all have been met with Defendant's dishonesty.  Defendant's behavior blocks the efforts of the Probation Department to assist her with her various problems.

Pursuant to 18 U.S.C. § 3583(e)(1), the Court may terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release.  The Court has considered the following factors:  the nature and circumstances of Defendant Napulou's offense and the history and characteristics of the Defendant; the need to afford adequate

17

deterrence to criminal conduct; the need to protect the public from further crimes of the Defendant; and the need to provide Defendant with education or vocational training, medical care, or other correctional treatment in the most effective manner.  The Defendant's crime of dealing in methamphetamine is not a cause for concern at this time as Defendant does not appear to be taking or dealing in drugs.  Defendant has made some progress in securing employment so further education or vocational training is not required.

Her relationship with her family remains strained due to her pressure on them to lie in order to protect her from the consequences of her actions.  Further mental health treatment is not likely to be productive given Defendant's failure to cooperate.  The resources of the Probation Department appear to have taken the Defendant as far as it is possible given the effects of her lack of candor.  Concerns remain as to the indications of violence in Defendant's relationship with Karla Karou, but Defendant wishes no examination of the matter.

Effective August 31, 2010, Defendant Napulou's supervised release is **TERMINATED**.  The Court is satisfied that such action is warranted by Defendant's conduct and the interest of justice.

## CONCLUSION

(1)  With respect to the mandate from the Ninth Circuit Court of Appeals, the Court finds that there was sufficient reason to

18

impose Special Condition No. 12 at the March 24, 2008
sentencing for Defendant Napulou's violations of
supervision; and

(2)  The Request for Course of Action for alleged violations of
Supervised Release filed on August 3, 2010, for which
Defendant was brought before the Court on August 4, 2010 has
been heard and the Court declines to revoke Supervised
Release.

Defendant Napulou's Supervised Release is **TERMINATED**,
effective August 31, 2010.


IT IS SO ORDERED.

DATED: November 17, 2010, Honolulu, Hawaii.



                                         /S/ Helen Gillmor
                        _____
                        Helen Gillmor
                        United States District Judge


<u>United States v. Napulou</u>; Crim. No. 03-0538-03 HG; **ORDER
REGARDING REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS
AND TERMINATING DEFENDANT NAPULOU'S SUPERVISED RELEASE.**